UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
INTERNATIONAL LONGSHOREMEN'S    )
ASSOCIATION, AFL-CIO,           )
                                )
     Plaintiff,                 )
                                )
     v.                         )    Civil Action No. 04-824 (RBW)
                                )
NATIONAL MEDIATION BOARD,       )
                                )
     Defendant.                 )
_____ )
```

**MEMORANDUM OPINION**

The plaintiff brings this action seeking judicial review of an administrative decision of the National Mediation Board ("NMB"). Complaint for Judicial Review of Administrative Agency Order ("Compl.") ¶ 1. Currently before the Court is (1) the National Mediation Board's Renewed Motion to Dismiss, or in the Alternative for Summary Judgment and Point and Authorities in Support Thereof ("Def.'s Mot."); (2) the plaintiff's Opposition to Defendant's Renewed Motion to Dismiss/Alternative Motion for Summary Judgment ("Pl.'s Opp'n"); (3) the Defendant's Reply in Support of Its Renewed Motion to Dismiss, or in the Alternative, for Summary Judgment ("Def.'s Reply"); and (4) the Plaintiff's Surreply in Opposition to Defendant's Renewed Motion to Dismiss/Alternative Motion for Summary Judgment ("Pl.'s Reply"). For the reasons set forth below, the defendant's motion must be denied.

**I.   Background**

This Court's March 30, 2005 Memorandum Opinion details the facts and background of this case. Int'l Longshoremens Ass'n v. N.M.B., 2005 WL 850358 (D.D.C. March 30, 2005).

Nonetheless, for clarity, the Court will again set forth the background relevant to the defendant's motion.

**(A)     Statutory Background**

In 1926, Congress passed the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq. (2000), to govern labor relations between railroad employees and their employers. The RLA "was drafted in an unusual collaborative effort by a committee representing railroads and railroad unions, [and] was devised to provide a workable solution for resolving disputes in their industry with minimal disruption to the public." Local 808, Bldg. Maint., Service & R.R. Workers v. N.M.B., 888 F.2d 1428, 1431 (D.C. Cir. 1989) (internal footnote omitted). The primary purpose underlying the RLA "'was to provide the machinery to prevent strikes and the resulting interruptions of interstate commerce.'" Id. (quoting Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. N.M.B., 425 F.2d 527, 533 (D.C. Cir. 1970)) (internal quotation marks omitted). Under the RLA, "[a]ll disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute." 45 U.S.C. § 152, Second.

In 1934, Congress amended the RLA and created the NMB to administer the RLA. 45 U.S.C. § 154. In the event of a dispute between a carrier's employees regarding who is their bargaining representative, the NMB, pursuant to Section 2, Ninth of the RLA, has the authority to investigate the dispute. See 45 U.S.C. § 152, Ninth. However, the NMB may only institute such an investigation "upon request of either party to the dispute," and it is clear that a carrier is not considered a "party" under Section 2, Ninth. Id. After completing its investigation, the NMB

must certify "to both parties," and "to the carrier," the employees' designated bargaining agent. Id.

**(B)     Factual Background**

On September 29, 2003, the NMB received an application from the International Longshoremen's Association, AFL-CIO ("ILA"), pursuant to Section 2, Ninth of the RLA, for certification as the duly designated representative of all non-supervisory operators, drivers, clerks and mechanics of the Georgia Ports Authority ("GPA") so it could represent these employees as their collective bargaining representative. Compl. ¶ 13. In October 2003, the NMB commenced an investigation of the ILA's application. Pl.'s Opp'n at 2. Shortly after the investigation began, the GPA challenged the NMB's subject matter jurisdiction, contending that the GPA was not a "carrier" within the meaning of the RLA, and thus was not subject to the provisions of the RLA. Def.'s Mot. at 2; Pl.'s Opp'n at 2-3. On March 23, 2004, at the conclusion of the investigation, the NMB issued its decision concluding that the GPA was not a "carrier" within the meaning of the RLA. Accordingly, the ILA's claim was dismissed for lack of jurisdiction. Def.'s Mot. at 2; Pl.'s Opp'n at 5.

On May 21, 2004, the plaintiff filed this action challenging the NMB's dismissal, alleging that the NMB "overlooked or ignored relevant evidence and facts" material to the question of whether the GPA is a carrier. Compl. ¶ 17. On July 20, 2004, the defendant filed its motion to dismiss, or alternatively for summary judgment, and submitted with that motion a number of documents that purported to comprise the administrative record. Then on March 30, 2005, this Court denied the defendant's motion, concluding that the administrative record was incomplete because it did not include witness statements that were plainly relied upon by the defendant in

making its determination that it lacked jurisdiction over the GPA. Int'l Longshoremen's Ass'n, 2005 WL 850358, at *4-5 (D.D.C. March 30, 2005). Following this Court's ruling, the defendant submitted redacted copies of these statements and has filed a renewed motion to dismiss, or in the alternative for summary judgment. This new motion is the subject of this opinion.

In the papers currently before the Court, the defendant again asserts that it is entitled to judgment in its favor because (1) the entire administrate record has now been submitted to the Court and (2) the NMB's decision was not arbitrary and capricious. Def.'s Mot. at 2-3. In response, the plaintiff argues that dispositive motions are premature because the administrative record still remains incomplete. Pl.'s Opp'n at 1. Specifically, the plaintiff contends that the administrative record is deficient in four respects. First, a witness statement from Paul Yarborough was not contained in the administrative record, despite suggestions from the NMB's investigators that one would be created following his interview. Id. at 15-16. Second, the plaintiff contends that handwritten notes taken during the investigation were not included in the administrative record. Id. at 15. Third, the plaintiff opines that the administrative record, consisting only of the parties' submissions and the twenty-one witness statements, is too "simplistic" and thus it has made "a substantial showing" that the record is incomplete. Id. at 17-18. As an example, the plaintiff notes that the NMB's "investigatory file" has not been provided to the Court, nor have the carrier's books or records. Id. at 20. Finally, the plaintiff posits that it was improper to redact the names and titles from the witness statements. Id. at 21 n.10.

## II. Legal Analysis

It is well-settled that under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A) (2000), this Court may vacate a decision by the NMB only if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." This standard is highly deferential to the agency, Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), and "there is a presumption in favor of the validity of the administrative action." Bristol-Myers Squibb Co. v. Shalala, 923 F. Supp. 212, 216 (D.D.C. 1996). Judicial review of an agency action under the APA must be based on the full administrative record that was before the agency at the time of the decision. Citizens to Pres. Overton Park, 401 U.S. at 420; Nat'l Res. Def. Council, Inc. v. Train, 519 F.2d 287, 291 (D.C. Cir. 1975); 5 U.S.C. § 706 (in reviewing an agency action under the APA "the court shall review the whole record or those parts of it cited by a party") (emphasis added). It is therefore improper for a district court to review only a "partial and truncated [administrative] record." Train, 519 F.3d. at 291. "The 'whole' administrative record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 487-88 (1951); see, e.g., Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993). "Allowing administrative agencies to preclude judicial access to materials relied upon by an agency in taking whatever action is then being subject to judicial scrutiny would make a mockery of judicial review." Smith v. F.T.C., 403 F. Supp. 1000, 1008 (D. Del. 1975); see also Walter O. Boswell Mem'l Hosp. v. Heckler, 749 F.2d 788, 791-93 (D.C. Cir. 1984). "However, deliberative intra-agency memoranda and other such records are ordinarily privileged, and need not be included in the record." Amfac Resorts, L.L.C.

v. Dept. of Interior, 143 F. Supp. 2d 7, 13 (D.D.C. 2001).

Ordinarily there is a presumption that the administrative agency has properly designated the administrative record, id. at 12 (citing Bar MK Ranches, 994 F.2d at 739), and "judicial review is ordinarily confined to the administrative record," id. at 11 (citations and internal quotation marks omitted).  However, a party can establish that the administrative record is incomplete and thus extra-record evidence should be reviewed by the Court if, inter alia, "the agency may have 'deliberately or negligently excluded documents that may have been adverse to its decision.'"[1]  Id. at 11-12 (citations omitted).

At the outset, this Court finds no merit to the plaintiff's proposition that the administrative record is facially inadequate.  Administrative records that have been found to be incomplete on their face have generally included only the agency's final decision and the documents that had been submitted by the parties.  See, e.g., Tenneco Oil Co. v. Dep't of Energy, 475 F. Supp. 299, 317 (D. Del. 1979).  That is not the case here.  While the bulk of the administrative record is comprised of the submissions by the parties, it also includes numerous witness statements that were taken during the investigative process.  Clearly, the administrative record in this case is not so lacking of documents that it is facially inadequate.  Moreover, there is no merit to the plaintiff's contention that the witness statement of Paul Yarborough is missing from the administrative record.  While there is a factual dispute as to whether the investigators said they would create such a statement, compare Pl.'s Opp'n, Hartridge Affidavit ¶ 4, with

---

[1] Discovery is permitted in an APA challenge to ensure a complete administrative record only if the party seeking discovery makes a "significant showing — variously described as a 'strong', 'substantial', or 'prima facie' showing — that it will find material in the agency's possession indicative of bad faith or an incomplete record."  Id. at 12.

Def.'s Reply, Dowling Decl. ¶ 7, the plaintiff simply speculates that a written statement was actually created. The Dowling declaration clearly states that no such statement was created. Id.; see also Def.'s Reply, Yarborough Affidavit ¶¶ 5-7. Thus, on this record, the plaintiff has failed to make a "strong showing" that such a statement exists and the administrative record is therefore incomplete. See Overton Park, 401 U.S. at 420 (the administrative record is comprised of documents that were before the agency at the time it reached its decision).

Whether the remaining documents — the handwritten notes taken during the investigation and the names and titles of the witnesses — should be part of the administrative record is a much closer question. There is no disagreement that these documents exist.[2] The only question before the Court then is whether their exclusion from the administrative record is proper. Based on the papers currently before the Court, it is simply not possible to resolve this question. The defendant concedes that the handwritten notes were taken during the investigation, but opines that they need not be included in the administrative record because the notes are protected by the deliberative process privilege. Def.'s Reply at 6. However, the defendant makes no effort to support this assertion with anything, such as an affidavit or declaration. Dowling's July 28, 2005 declaration asserts no privilege warranting the exclusion of these notes from the administrative record, nor does it contain a statement claiming that these documents were not part of the record considered by the NMB when it rendered its decision.[3] Moreover, the

---

[2] Because there is no dispute that these documents exist, and in light of the fact that the defendant recently provided responses to the plaintiff's discovery requests, this Court finds no need for the parties to engage in further discovery.

[3] The defendant's response to the plaintiff's first request for production of documents indicates that the handwritten notes were not considered by the NMB and are privileged, and thus should not be part of the administrative record. Def.'s Reply, Ex. 3 (Defendant's Response to Plaintiff's First Request for Production of

(continued...)

notes appear to have been taken as witnesses were being interviewed. Def.'s Reply at 6. Thus, it is difficult for this Court to imagine that the notes contain anything other than the factual information collected from the witnesses during the investigation.[4]

While this Court has found no case detailing the method by which an agency can establish that certain documents should not be contained in the administrative record because they are deemed privileged, see, e.g., Amfac Resorts, 143 F. Supp. 2d at 13, it is clear that privileges under the APA are considered to be "co-extensive with Exemption 5 of the Freedom of Information Act," Seabulk Transmarine I, Inc. v. Dole, 645 F. Supp. 196, 201 n.3 (D.D.C. 1986). Thus, to properly defend against a challenge to the exclusion of information from an administrative record, a defendant should necessarily provide the same information it would submit when defending against a challenge for withholding such information in a Freedom of Information Act action. See, e.g., Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973). No such showing has been made in this case. Accordingly, this Court simply cannot conclude based on the current record that it has the entire administrative record before it, and it must therefore

---

[3](...continued)
Documents) at 3. It is unclear why there is no declaration asserting the same positions.

[4] The defendant's redaction of the witnesses' statements is also troubling. If the NMB places more weight on witness statements from individuals who are employed in one capacity over individuals who are employed in another capacity, or gives more credence to statements from individuals who have been employees for a longer period of time, then clearly the redacted information was before the board at the time of their decision and should be included as part of the administrative record. While the Court appreciates the defendant's desire to protect the confidentiality of the witnesses, if doing so compromises this Court's ability to adequately review the administrative record, the redactions are not appropriate. Certainly a protective order could be crafted to protect the confidentiality of the witnesses or, if absolutely necessary, an ex parte submission could be presented to the Court. The defendant did not pursue either of these options. Moreover, the plaintiff has proffered no evidence to suggest that this information should not be part of the administrative record. If the defendant continues to refuse to provide this Court with all the documents and information that were before the agency at the time it made its decision, or fails to provide the Court with a legal basis for withholding the information from the administrative record, the Court will be required to view the redacted information in the witness statements in the light most favorable to the plaintiff. See, e.g., Seabulk Transmarine I, 645 F. Supp. at 202.

deny the defendant's motion to dismiss or, in the alternative, for summary judgment.

### III.   Conclusion

Courts are rarely required to make such an extensive inquiry into the completeness of an administrative record. This case, however, demands such an inquiry because there is substantial evidence that the defendant may have omitted documents from the administrative record. And it is incumbent upon the Court to ensure that it has a complete administrative record before it undertakes a review of an administrative decision. Accordingly, for the reasons set forth above, this Court simply cannot grant the defendant's motion. Rather, this Court will provide the defendant the opportunity to resubmit these motions. When doing so, the Court expects the defendant to address in the first instance whether the documents identified by the defendant, i.e., the handwritten notes and the personal information contained in the witness statements, should be properly be excluded from the administrative record. Additionally, the defendant's motion must be accompanied by the necessary support for its arguments that certain documents that appear relevant are properly excluded.

**SO ORDERED** this day of 25th day of January, 2006.[5]

                                        REGGIE B. WALTON
                                        United States District Judge

---

[5] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.